**FAMILY LAW**


**CHILD ABUSE AND NEGLECT – REPORTING REQUIREMENTS AND SCOPE OF IMMUNITY**


August 4, 1995


*Ms. Gloria Goldfaden*
*Governor's Council on Child Abuse and Neglect*

On behalf of the Governor's Council on Child Abuse and Neglect, you have requested our opinion on several issues relating to the State law on the reporting of child abuse and neglect. Specifically, you pose the following questions:

1.     How is "good faith" defined under §5-702(2) of the Family ("FL") Article and §5-362 of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code?

2.     Are there any circumstances under which "good faith" reporting of suspected child abuse is not given statutory immunity from criminal penalty or civil liability?

3.     How does the term "suspected" child abuse, as used in FL §5-702(1), relate to the term "reason to believe," as used in FL §5-705(a)?

4.     Are there any circumstances under which a person who suspects child abuse need not report the abuse to the local department of social services or appropriate law enforcement agency?

Our opinion is as follows:

1.     "Good faith" is not defined in the statute. By court interpretation, the term means "with an honest intention."

2.    Any person who reports suspected child abuse in good faith is immune from criminal penalty or civil liability.[1]   This immunity is qualified immunity; it does not extend to a report made in bad faith.  Nor does immunity from criminal liability extend to an abuser who reports his or her own conduct.

3.    The term "suspected," as used in FL 5-702(1), should be construed as synonymous with the "reason to believe" standard in FL §5-705(a).

4.    Anyone who has reason to believe that child abuse has occurred must report the situation.  The only exceptions to this near-absolute duty are those set out in the statute:   information encompassed by the attorney-client privilege described in CJ §9-108 or information otherwise encompassed by the duty of confidentiality owed by an attorney to his or her client; information that, if reported, would breach the constitutional right to assistance of counsel; and certain confidential communications to a minister, clergyman, or priest.  Apart from these exceptions, a person has an affirmative obligation to report suspected child abuse.


# I

## Statutory Text

FL §5-705(a) imposes the following legal duty to report child abuse or neglect:

> (1)  Except as provided in paragraphs (2) and (3) of this subsection, notwithstanding any other provision of law, including a law on privileged communications, a person other than a health practitioner, police officer, or educator or human service worker who has reason to believe that a child has been subjected to abuse or neglect shall:

---

[1] For the most part in this opinion, we shall refer only to child abuse. In general, the same conclusions would apply to the reporting of child neglect.

(i) if a person has reason to believe that the child has been subjected to abuse, notify the local department [of social services] or the appropriate law enforcement agency; or

(ii) if the person has reason to believe that the child has been subjected to neglect, notify the local department.

FL §5-704 imposes the same duty, with certain additional requirements, on health practitioners, police officers, educators, and human service workers. *See generally* 78 *Opinions of the Attorney General* 189 (1993).

FL §5-708 grants immunity to a person who reports suspected abuse or neglect: "Any person who makes or participates in making a report of abuse or neglect under §5-704 or §5-705 of this subtitle or participates in an investigation or a resulting judicial proceeding shall have the immunity described under §5-362 of the Courts and Judicial Proceedings Article from civil liability or criminal penalty." Correspondingly, CJ §5-362 grants immunity to "[a]ny person who in good faith makes or participates in making a report of abuse or neglect under §5-704 or §5-705 of the Family Law Article or participates in an investigation or a resulting judicial proceeding ...." *See Wildauer v. Frederick County*, 993 F.2d 369, 373 (4th Cir. 1993).

## II

## Definition of "Good Faith"

The term "good faith" is not defined by the statute. The term has been explained, however, by the Court of Special Appeals:

"Good faith" is an intangible and abstract quality that encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.... Thus, we would infer that the definition of "good faith" under FL §5-708 means with an honest intention.

*Catterton v. Coale*, 84 Md. App. 337, 342, 579 A.2d 781 (1990), *cert. denied*, 321 Md 638 (1991) (citations omitted). *See also Laws v. Thompson*, 78 Md. App. 665, 678, 554 A.2d 1264, *cert. denied*, 316 Md. 428, 559 A.2d 791 (1989). "Good faith" takes on meaning from its opposite, "bad faith"; the latter term means "not simply bad judgment or negligence, but it implies a dishonest purpose or some moral obliquity and a conscious doing of wrong." *Catterton*, 84 Md. App. at 342.

*Catterton* itself illustrates the distinction. The Court of Special Appeals held that immunity under FL §5-708 mandated dismissal of a claim that alleged negligence by an investigator. But a claim that alleged a fabrication by the investigator should not have been dismissed. 84 Md. App. at 342-43.

Thus, a person reports in "good faith" if the report is made with an honest intention, even if the report turns out to be unfounded. A person reports in bad faith if the report is deliberately dishonest.

## III

### Scope of Immunity

#### A.   *Introduction*

From the very beginning, the General Assembly has linked immunity to the duty to report child abuse. When the General Assembly first required physicians to report abuse of children whom they were treating, it granted immunity from civil liability for anyone participating in the report or any juvenile proceeding resulting from the report. Chapter 104, Laws of Maryland 1964. Over the years, the reporting requirement was progressively expanded and is now universal. *See generally* 78 *Opinions of the Attorney General* 189, 195-97 (1993). Immunity was correspondingly expanded to its present form.

Immunity, then, is an essential tool for an effective reporting system. The mandate to report would be undermined if a potential reporter had to weigh the risk of civil or criminal liability as a result of making a report.

### B.    Qualified Immunity

The immunity afforded a reporter of child abuse is qualified immunity.  That is, the statute protects those who report child abuse and neglect in "good faith."  Thus, where a person makes a report with an honest intention, without malice or a design to defraud or seek an unconscionable advantage, that person is protected from civil or criminal liability.[2]  *Catterton v. Coale*, 84 Md. App. at 342.  *See also Awkerman v. Tri-County Orthopedic Group, P.C.*, 373 N.W.2d 204, 208 (Mich. App. 1985) (child abuse reporting statute clearly and unambiguously provides immunity to persons who file a child abuse report in good faith); *Davis v. Durham City Schools*, 372 S.E.2d 318, 320 (N.C. App. 1988) (a report of suspected child abuse made in good faith clearly falls within the scope of immunity contemplated by reporting statute).  *See generally* Annotation *Validity, Construction, and Application of State Statute Requiring Doctor or Other Person To Report Child Abuse*, 73 A.L.R.4th 782 (1989).  Conversely, a person who makes a report in "bad faith" is not subject to the qualified immunity under Maryland law.  *See Catterton*, 84 Md. App. at 343.

That the immunity under FL §5-708 is qualified, rather than absolute, reflects the General Assembly's policy decision.  Other states have opted for absolute immunity.  *See, e.g.*, Ala. Code §26-14-9 ("Any person participating in the making of a report of child abuse shall, in doing so, be immune from any liability, civil or criminal, that might otherwise be incurred or imposed").  *See also*

---

[2] Good-faith immunity is a common component of other states' reporting laws. *See, e.g.,* Colo. Rev. Stat. §19-10-110 (immunity from any liability, civil or criminal provided such actions are taken in good faith); Ill. Ann. St. Ch. 325 §5/9 ("any person participating in good faith in making a report of child abuse shall have immunity from any liability, civil or criminal"); Mich. Code §41-2-203 (immunity from liability for reporting incident of abuse in absence of evidence of bad faith or malicious purpose); Pa. Stat. Ann. §6318 ("A person participating in good faith in making a report of suspected child abuse shall have immunity from any civil or criminal liability"); Va. Code Ann. §63.1-248.5 (person making a report of certain injuries to children shall be immune from any civil or criminal liability in connection therewith, "unless it is proven that such person acted in bad faith or with malicious intent"); Wyo. Stat. §14-3-209 ("any person participating in good faith in any act of reporting child abuse is immune from any civil or criminal liability").

*Thomas v. Chadwick*, 274 Cal. Rptr. 128, 133 (Cal. App. 1990) (intentionally false report by a mandated reporter is immunized); *Hartley v. Hartley*, 537 N.E.2d 706 (Ohio App. 1988) (absolute immunity to anyone making report of child abuse whether in good faith or not).

By its terms, FL §5-708 extends immunity to criminal liability that may result from making or participating in a report of child abuse. However, it does not immunize the underlying abuse. In other words, the class of persons entitled to immunity from criminal liability is restricted to those persons who report someone else's alleged child abuse, not their own.

Article 27, §35C provides that "a parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment for not more than 15 years." We must take account of this statute when we construe the grant of immunity in FL §5-708.[3] If FL §5-708 were construed as extending to a perpetrator of the child abuse, Article 27, §35C would be meaningless. *See Popham v. State Farm Mut. Ins. Co*, 333 Md. 136, 148-49, 634 A.2d 38 (1993) (statutes that deal with the same subject matter should be construed together and harmonized to the extent possible; neither should be read so as to render the other meaningless). *See also State v. King*, 434 N.W.2d 627, 638 (Iowa 1989) (reporting of child abuse does not entitle perpetrator to claim immunity from prosecution); *State v. Howland*, 484 A.2d 1076 (N.J. 1984) (class of persons entitled to immunity from criminal liability does not include perpetrators of abuse); *Henderson v. State*, 758 S.W.2d 694, 696 (Tex. App. 1988) (individual's report of his own conduct was not grounds for immunity under a child abuse reporting statute). *See generally* Annotation, 73 A.L.R.4th at 830.

---

[3] Statutes that deal with the same subject matter are *in pari materia* and must be construed harmoniously in order to give full effect to each enactment. *Gargliano v. State*, 334 Md. 428, 436, 639 A.2d 675 (1994). *See also State v. Cicoria*, 332 Md. 21, 42-43, 629 A.2d 742 (1993); *State v. Thompson*, 332 Md. 1, 7, 629 A.2d 742 (1993); 2B Norman J. Singer, *Sutherland Statutory Construction*, §51.02 (5th ed. 1991) (legislative provisions that are *in pari materia* should be construed together).

## IV

### "Suspected" Abuse and "Reason to Believe"

FL §5-702 declares the legislative policy underlying the enactment of the child abuse reporting laws. Their purpose "is to protect children who have been the subject of abuse or neglect by: ... giving immunity to any individual who reports, in good faith, a *suspected* incident of abuse or neglect." (Emphasis added.)

Recitals of purpose reflect "the reason or occasion for making a law"; they "explain in general terms the policy of the enactment." 62 *Opinions of the Attorney General* 245, 250-51 (1977). Thus, a codified statement of policy like FL §5-702 can be an important aid in construing ambiguous text. *See, e.g., Parrison v. State*, 335 Md. 554, 560, 644 A.2d 537 (1994). Nevertheless, policy recitations are distinct from, and cannot by their own force alter, substantive elements of the statute. *See Hammond v. Frankfeld*, 194 Md. 487, 491, 71 A.2d 482 (1950). *See also* 2A Norman J. Singer, *Sutherland Statutory Construction*, §47.04 (5th ed. 1992).

FL §5-705(a) contains the operative language "reason to believe"; that term identifies the circumstances under which a person must report child abuse to the local department of social services or law enforcement agency. The term "suspected," as used in FL §5-702, does not modify this substantive requirement. Instead, "suspected" should be interpreted as a short-hand way of describing "reason to believe."

## V

### Reporting of Child Abuse

FL §§5-704(a) and §5-705(a) together require that anyone who has reason to believe that a child has been subjected to abuse "shall notify" the local department of social services or the appropriate law enforcement agency. The term "shall" means that compliance is mandatory. *See Thanos v. State*, 332 Md. 511, 522, 632 A.2d 768 (1993); *Tucker v. State*, 89 Md. App. 295, 298, 598 A.2d 479 (1991); *Robinson v. Pleet*, 76 Md. App. 173, 182, 544 A.2d 1, *cert. denied*, 313 A.2d 689, 548 A.2d 128 (1988). *See also* 3 *Sutherland Statutory Construction* §57.03.

The only exceptions are in FL §5-705(a)(2) and (3). Paragraph (2) excuses reporting of information encompassed by the attorney-client privilege described in CJ §9-108, reporting of information otherwise encompassed by the duty of confidentiality owed by an attorney to his or her client, and reporting that would violate the constitutional right to assistance of counsel. Paragraph (3) excuses reporting of certain confidential communications to a minister, clergyman, or priest. *See generally* Mary Harter Mitchell, *Must Clergy Tell? Child Abuse Reporting Requirements Versus Clergy Privilege & Free Exercise of Religion*, 71 Minn. L. Rev. 723 (1987). Unless one of these exceptions applies, a person has an affirmative and unqualified obligation to report child abuse.

J. Joseph Curran, Jr.
*Attorney General*

Kimberly Smith Ward
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*